Earl D. **BOLTON** and Rosalie M. **Bolton,**
Plaintiffs-Respondents,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation,**
Defendant-Appellant.

No. 23841.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

ment in the amount of $1895 for damages to improved pasture and fencing on their 93 acre farm located in Pettis County, Missouri, from fire allegedly caused by defendant Missouri-Kansas-Texas Railroad Corporation. The defendant has appealed.

The amended petition on which plaintiffs went to trial was in three counts. It was alleged in Count 1 that on April 27, 1960, defendant's employees were burning grass and weeds along defendant's right-of-way which adjoins plaintiffs' farm and left the fire unattended; that it spread onto plaintiffs' property, burning and destroying four acres of improved pasture to plaintiffs' damage in the sum of $160. It was alleged in Count 2 that on December 4, 1960, sparks of fire escaped from defendant's engine and set fire to the right-of-way; that defendant permitted the fire to escape onto plaintiffs' property "burning over twenty-two acres of improved pasture". Plaintiffs asked $880 in damages for this burning. It was alleged in Count 3 that on April 19, 1962, sparks of fire escaped from defendant's engine and set fire to the right-of-way. "That said fire was allowed by defendant to spread onto the property of plaintiffs, burning over sixty-two and one-half acres of improved pasture, burning five hundred hedge posts and five hundred rods of fence", thereby damaging plaintiffs to the extent of $2830.

The answer was a general denial. During the trial defendant did not actually deny that it started the fires and its counsel in the argument before this court conceded that it had. The verdict was for plaintiffs on each count with damages of $40 on Count 1, $376 under Count 2, and $1479 under Count 3, making a total of $1895.

On its appeal defendant makes three assignments of error. It says (1) Given Instruction 1 as to Count 3, was erroneous because it permitted the jury to consider damage to hedge posts and fencing, when there was no evidence of such loss. (2) Instructions 1, 2, and 3, failed to inform the jury "of the method of arriving at the damage to plaintiffs' improved pasture and

Poague, Brock & Wall, Barkley M. Brock, Julius F. Wall, Clinton, for appellant.

James B. Wilson, Windsor, for respondents.

MAUGHMER, Commissioner.

Plaintiffs, Earl D. and Rosalie M. Bolton, husband and wife, had the verdict and judg-

fences" and hence were erroneous. (3) The damages allowed were excessive "for the reason that the land was in the Soil Bank Program, no crops could be produced at the time of the fires, nor at the present time and no Soil Bank Program checks have been reduced or stopped". Plaintiffs are not in this proceeding seeking recovery for loss of annual crops but instead for damages to their farm for destruction of or injury to their "improved pasture", which is a quasi-permanent improvement. This is permissible even though the farm is under the Soil Bank Program.

The testimony of Mr. and Mrs. Bolton was that Mr. Bolton worked regularly "off the farm" at the Whiteman Air Force Base; that the whole farm was in grass—in improved pasture—including about four acres in alfalfa and the balance in a combination of grasses, including lespedeza, red top, alsike clover, timothy and fescue. The Boltons harvested no crops off the land since it was all in the Soil Bank Program. They received annual payments of $1540.35 from the government. They were not permitted to take a crop—hay or seed—from the farm but were required to mow the weeds. It is conceded that plaintiffs received their full Soil Bank payments each year and, based upon their tax returns, these payments constituted almost the entire income from the farm.

We shall quote the brief testimony of Mr. Bolton on the question of fence damage and as to the value of the fences destroyed or damaged. Except for the general statement of Mrs. Bolton that some of the fences were burned "clear to the ground", this testimony of Mr. Bolton was the only evidence presented on this particular issue.

"Q. How much fencing was burned during the fire?

"A. About 500 rods of fencing.

"Q. Do you know the price of posts at the present time?

"A. I don't.

"Q. Do you know the price of wire at the present time?

"A. I looked it up in the catalog.

"Q. Could you tell us what the price is?

"A. For the kind that I had, thirty some odd dollars, thirty-one or two dollars, somewhere in that neighborhood, in Kansas City in the Montgomery Ward catalog for 20 rods, that is 39 inch 6-inch stay, heavy fencing that I had.

"Q. Have you investigated the cost of replacing the fence that was burned?

"A. I estimated it.

"Q. And what is the cost per rod?

"A. If you were started from scratch, putting in a fence would cost approximately a dollar and a half a rod.

"Q. These fences aren't completely destroyed, they have been damaged some, is that correct?

"A. That's true, with the exception of the east fence, which is a partnership fence.

"Q. That was an old fence?

"A. It was an old fence, but it served the purpose.

"Q. It's not your testimony that all the posts were ruined or that all the wire was ruined?

"A. No, I'm not claiming that they were all ruined".

There was no showing as to when the fences were built. There was no evidence as to the value of the fencing immediately before or immediately after the fire, nor did any witness attempt to estimate the value of the farm immediately before and immediately after the fence burning. Neither did plaintiffs nor anyone in their behalf ex-

press any opinion as to the cost of repairing the fence to a condition as good and valuable as it was before the fire. The only testimony touching the point was as to the cost of a completely new fence. The evidence of Mr. Bolton himself is that the fencing was not entirely destroyed. He said he was "not claiming that all the posts were ruined or that all the wire was ruined". This fence or these fences have not been repaired or rebuilt or replaced except that portion which belongs to defendant railroad company.

■ Defendant urges that the proper measure of damages in this case respecting not only fence damage but damage to the permanent pasture as well, is the difference in the value of the farm immediately before and immediately after the fire or fires. While such a test is a proper one, we think it is not the only measure which plaintiffs may use. Our appellate courts have in somewhat similar cases approved recoveries based upon evidence as to the value of the fence or thing damaged or destroyed and under an instruction in accordance with such evidence. We shall refer to and quote from some such authorities.

■ From Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co., Mo.App., 223 S.W.2d 100, 104, 105:

"The general rule, as heretofore stated, is that the measure of damage is the difference between the reasonable value of the property before and the reasonable value thereof after the accident. We are aware that in cases where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, there is an exception to the above general rule. However, before allowing plaintiff to rely solely on evidence of the costs of repair, there should be a showing of the comparative insignificance of the damage to bring the case within such exception to the general rule".

And while plaintiffs here are not asking damages for either total or partial destruction of a crop, but rather for permanent damage to an improved pasture and to fences, we think the measure of damage rule as stated by the Supreme Court in Happy v. Kenton et al., 362 Mo. 1156, 247 S.W.2d 698, 704, 705, for annual crops might be applicable. The court said:

"* * * nevertheless, we think there can be no question but that the measure of damage for injury to or destruction of a growing annual crop is, in the case of total destruction: the value of the crop at the time and place of destruction; and as to injury or partial destruction: the difference between the value of the crop immediately before and immediately after the injury. (citing cases)".

This court in Beaty et al. v. N. W. Electric Power Cooperative, Inc., 312 S.W.2d 369, 371, in discussing the measure of damages for the destruction of fence, and after citing cases in support, said: "These cases hold, in effect, that the measure of damages for the destruction of a fence is the actual value of the fence as it stood, before destruction"

In 15 Am.Jur., Damages, p. 527, on fences, we are told:

"According to the weight of authority, the measure of damages for the destruction of a fence is its value in its condition at the time of its destruction.

* * * *

"Some courts hold that the measure of damages is the cost of replacing the fence, provided this can be done at reasonable cost and is practicable, or the cost of repairing it where it is not totally destroyed".

In Steffens v. Fisher, 161 Mo.App. 386, 143 S.W. 1101, 1103, we find this statement: "The rule is well settled that the measure of damages for the destruction of a fence

by fire is the actual value of the fence as it stood".

25 C.J.S. Damages § 85a, page 610, on fences, contains this comment:

"According to some authorities, the measure of damages for the destruction of a fence is the cost of replacing it in its former condition, while according to other authorities, it is the value of the fence, which value, it has been said, is not the market value of the fence but the value of the fence as an inclosure to plaintiff's land. Another measure of damages which has been adopted is the difference between the value of the land before and after the injury. Under the rule that the measure of damages is the value of the fence, the cost of a different kind of fence to replace one destroyed or one inclosing more land cannot be recovered".

Plaintiffs' given Instruction 1, covering the third fire and seeking a recovery for both fence and pasture damage after requiring a finding that defendant caused the fire, continued: " * * * and if you further find that plaintiffs' improved pasture, hedge posts and fencing mentioned in the evidence were thereby damaged, then your verdict will be for the plaintiffs for such sum as you believe will fairly and reasonably compensate plaintiffs for such damage, not to exceed Two Thousand, Eight Hundred Thirty Dollars".

■ It seems apparent that generally the measure of damages in cases involving real property is the difference in the value of the property immediately before and immediately after the damages were inflicted. De Long et al. v. Broadston et al., Mo.App., 272 S.W.2d 493, 497, Cirese v. Spitcaufsky et al., Mo.App., 265 S.W.2d 753, 758. However, this is not a hard and fast rule. It is relaxed and where the damage is done to fencing or an improved pasture it would be permissible to show the difference in the value of the fencing or the improved pasture immediately before and immediately after the burning. And the cost of repairing to a condition equal to that existing before the damage would probably be sufficient. Either of these three methods would, we think, arrive at about the same result and if precisely applied would reach the same estimate as to the amount of damage.

■ A verdict-directing instruction on the measure of damages must set forth a proper rule for the measurement of such damages. If it fails to do so then it gives the jury a roving commission to guess on this vital point and provides no legal yardstick by which to determine the amount of the damages. Instruction 1 neither limits the amount of damages to (a) the difference in the value of the farm immediately before and immediately after the fire or (b) the value of the fence before and after, or (c) the cost of repair. Its only limitation for fence and pasture damage is $2830, the amount plaintiffs sued for.

Furthermore, there must be proper evidence on this vital issue upon which a consistent instruction may be based. Otherwise, while the jury might be given an instruction setting forth a proper rule, it would still be without evidence under which it could be applied. In Brown v. Pennsylvania Fire Ins. Co., Philadelphia, Mo.App., 263 S.W.2d 893, 899, plaintiff had recovered $510 for windstorm damage to his three-story residence in St. Louis. Such damage might be considered as insignificant when compared to the value of a three-story residence and a suitable case for application of the "insignificant rule" as announced by the court in Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co., supra, but the St. Louis Court of Appeals refused to do so. The only evidence offered was the testimony of plaintiff and his contractor that the repairs cost $510. The court reversed, holding such evidence as insufficient on which to predicate an instruction on the measure of damages. The court said further:

"The rule established in this state through a long line of cases is that the

measure of damages to real property is the difference between the market value of the property immediately before and immediately after the damage is sustained. (citing cases)".

In addition, the opinion refers to Johnstone v. Home Ins. Co. of New York, Mo. App., 34 S.W.2d 1029, and quotes with approval as follows from that case:

" 'The plaintiffs did introduce evidence as to the actual cost of the repairs, which was proper, as throwing some light on the question of value after the fire, but that is not the measure of the value. * * *

" ' * * * evidence of the cost of repair is a proper element to be considered, but it is not conclusive of the value of the property after the loss. (citing cases)' 34 S.W.2d loc. cit. 1033".

■ The testimony of Mr. Bolton, which is really the only testimony touching the fencing matter and which we have hereinabove set forth, fails to either estimate the cost of repair, the value of the fence just before and just after the fire, or the value of the farm immediately before and immediately after. Hence this judgment must be reversed and the cause remanded for the giving of Instruction 1 because first, it does not set forth a proper rule or a permissive rule for the measure of damages and, second, there is no evidence laying an evidentiary foundation upon which such an instruction could be based.

The same criticisms apply to Instructions 2 and 3, covering the first and second fires and seeking damages for the burning of improved pasture. There was a little more evidence covering the alleged damage to the pasture. However, it is not contended that the pasture was entirely destroyed, but rather only partially damaged. There was again no evidence as to the value of the farm or the value of the improved pasture immediately before and immediately after the fires, nor was there any real estimate made as to the cost of repair or bringing this pasture back to a condition equal to that which existed prior to the fires. There was some evidence as to the probable costs of complete reseeding and refertilization. Instructions 2 and 3 also fail to set forth either a proper or permissive rule for the measure of damages.

Defendant suggests that the error regarding the fence recovery at least might be cured by a remittitur. We disagree for two reasons: First, we are not sure as to just what amount the jury allowed for fence damage and, second, we believe that upon a retrial, plaintiffs can produce proper evidence and prepare a suitable instruction submitting this issue to the jury. They should be given an opportunity to do so.

This court is hesitant to reverse cases upon imperfect instructions. However, an examination of numerous cases similar to the one before us shows that many clear pronouncements have been made by the appellate courts as to the proper measure of damages in this type of case and the evidence which must be presented as a foundation upon which to base a suitable instruction. We believe that an examination of some of those cases and a consideration of this opinion by plaintiffs will enable them upon a second trial to comply with these minimum requirements.

The judgment is reversed and the cause remanded for a new trial.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.