**3615 CORPORATION, Appellant,**

v.

**NEW YORK LIFE INSURANCE CO., Appellee,**

v.

**CITY OF ST. LOUIS, MISSOURI,**

**Con-Grand, Ltd., Intervenor-Appellee.**

No. 82–2398.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1983.

Decided Oct. 6, 1983.

Thomas C. Walsh, David S. Slavkin, St. Louis, Mo., for appellee New York Life Ins. Co.; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Lewis R. Mills, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for intervenor-appellee Con-Grand, Ltd.

Harry O. Moline, Moline, Tegethoff, Ottsen, Mauze & Leggat, Sherri L. Cranmore, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and DUMBAULD,* Senior District Judge.

PER CURIAM.

This is a suit by the purchaser, 3615 Corporation, a Missouri corporation, against the vendor, New York Life Insurance Co., a New York corporation, for the specific performance of a contract for the sale of property known as the Continental Building located in midtown St. Louis. The building had been substantially damaged during the executory interval of the contract, and purchaser seeks to compel vendor to repair the damage and to convey the building, or to convey the building in its damaged condition and pay purchaser the cost of repair. The district court, 550 F.Supp. 1035, denied this relief and we affirm.[1]

The case was submitted to the district court on stipulated facts. On December 21, 1977, the parties entered into a contract for the sale of the Continental Building for the sum of $35,000. The building was a vacant, twenty-four story office building which would require extensive renovation. The purchaser paid an earnest money deposit of $5,000 at the time of the execution of the contract. The remainder of the purchase price was to be paid at closing on February 15, 1978. The contract contained the following risk of loss provision:

> If, after contract is executed, the premises be destroyed or damaged by fire, windstorm or otherwise, seller shall restore same within 30 days if possible and sale closing shall be extended accordingly, but otherwise purchaser shall have option of cancelling or enforcing contract; if enforced purchaser shall be entitled to insurance; if cancelled, earnest deposit shall be returned to purchaser ... seller shall assume risk of such destruction or damage ....

On the morning of February 14, 1978, before the contract was closed, a water main in the basement of the building broke and flooded the basement. A pumping contractor, engaged by the property manager, began to pump the water from the building that same day and worked continuously until February 17, 1978.

As a result of the flooding, the building's electrical system was rendered inoperative. On February 17, 1978, an electrician examined the building and concluded that if the electrical system were immediately dried out and energized over a ten-day period, at a cost of $25,000, there was a "fighting chance" of saving the system. If the sys-

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. Intervenor-appellee Con-Grand, Ltd., purchased the Continental Building in its still damaged condition from vendor for $75,000 after the district court entered an interlocutory order denying specific performance on December 16, 1981.

tem could not be saved, the switchboard would need to be replaced, which would take six to eight weeks.

Although the vendor had fire and extended coverage insurance on the building in excess of $1,500,000.00, pursuant to a group policy covering several of its buildings, the particular damage here was not covered. The vendor decided not to undertake any repairs and returned the earnest money deposit by letter of June 21, 1978.[2] The building continued to deteriorate until the time of trial when it was estimated that it would take approximately $1,125,000.00 to restore the building to the condition it was in prior to the February 14, 1978, damage. Purchaser's position in the district court was that vendor must make that restoration and then convey the building to purchaser or must convey the building and pay purchaser the cost of restoration.

The risk of loss provision in the contract before us reflects Missouri law on this issue. *Skelly Oil Co. v. Ashmore,* 365 S.W.2d 582 (Mo.1963) (banc), established that in the absence of a contractual risk of loss provision, damage to property during the executory interval falls on the vendor, *i.e.,* the vendor will not be able to enforce the contract against the purchaser at the original contract price. In the instant case, the parties have specifically so provided.

■ However, the contract also provided that if the premises are damaged before closing, "seller shall restore the same within 30 days *if possible* ... but otherwise purchaser shall have option of cancelling or enforcing contract." (Emphasis added.) The district court made a finding of fact that the damage to the Continental Building resulting from the flooding was so extensive that the repairs could not have been made within 30 days. This finding is not clearly erroneous. Under the terms of the contract, purchaser then had two options:

2. Purchaser maintains that this check was never cashed.

3. Under *Skelly Oil Co. v. Ashmore,* 365 S.W.2d 582 (Mo.1963) (banc), purchaser might have

it could either take the building as it was[3] or it could cancel the contract.

The purchaser was unwilling to go ahead with the contract unless the damage was repaired; the contract therefore became null and void and there is nothing upon which to base an action for specific performance. *Keller v. Reich,* 646 S.W.2d 141, 143 (Mo.Ct.App.1983).

■ Furthermore, we note that specific performance will not be decreed where it would be oppressive, unfair, inequitable or would work an unreasonable and disproportionate hardship on the defendant. *Zoellner v. Carty,* 585 S.W.2d 289, 291 (Mo.Ct. App.1979). The district court determined that requiring the vendor to expend more than one million dollars to enforce a $35,000 contract would have been inequitable and oppressive. We find no abuse of discretion here. *See, e.g., Laclede Gas Co. v. Amoco Oil Co.,* 522 F.2d 33, 38–39 (8th Cir.1975).

Accordingly, the judgment of the district court is affirmed.

been entitled to an abatement in the purchase price had it elected to enforce the contract, *i.e.,* take the building in its damaged condition.