**Darrell R. REED, Vol F. Holland, Robert V. Adams and James M. Thomas, Plaintiffs-Respondents,**

v.

**Dale FOULKS, Defendant-Appellant,**

and

**Ripley County State Bank, Defendant.**

**No. 13232.**

Missouri Court of Appeals,
Southern District,
Division Three.

Aug. 22, 1984.

Guy H. Richardson, Poplar Bluff, for defendant-appellant.

Randolph Maness, Maness & Miller, Doniphan, for plaintiffs-respondents.

HOGAN, Judge.

In this case involving the doctrine of equitable conversion by contract, the trial court has effected specific performance of a contract to sell real property by granting mandatory injunctive relief. Defendant Foulks appeals. The trial court reached a correct result, and we affirm.

The realty which the plaintiffs agreed to buy is a tract of land—"[t]wo 50-foot lots by a hundred and some deep"—which lies along the west bank of Current River near Doniphan, in Ripley County. The defendant paid $5,000 for the property. After he bought the place, he installed a septic tank, dug a well, and "cleaned the place up." He then put a house trailer on the property. By his own estimate, Foulks' improvements had increased the value of the land $2,000

or $3,000. At the time of sale, there were several liens against the land; the defendant bank apparently had a perfected security interest in the trailer. The debt secured was about $2,400 at the time of trial. In the view we take of this appeal, the nature and amount of the other liens is immaterial. The decree required satisfaction of the defendant bank's lien, and that aspect of the case has not been appealed.

The plaintiffs wanted to buy the property. They designated Frank Thomas, an insurance agent who is plaintiff James Thomas' father, as their negotiating and contracting agent. Thomas discussed the sale with Foulks, and Foulks agreed to sell the property for $11,500. The substance of the agreement was that Foulks would convey the land and improvements, including the trailer, and plaintiffs would discharge all encumbrances and pay Foulks the sum of $4,883.71 in cash for his "equity." Foulks was to retain the personal property in the trailer. The sale was to be "closed" on December 3, 1982.

The parties appeared for completion of the sale in "Don Hancock's office." The abstract of title had been extended, instruments of conveyance had been prepared, and Thomas had drawn four checks for delivery. Two checks, in the total amount of $4,200 were delivered to discharge encumbrances and Foulks' check in the amount of $4,883.71 was delivered to him. Apparently, the sale was completed on December 3, except for discharge of the defendant bank's lien on the trailer.

The sale was not fully completed on December 3 because the Current River was at flood stage and Foulks did not know if he had flood coverage on the trailer. Thomas believed that if he paid the defendant bank, Foulks would no longer have an insurable interest in the trailer. Thomas therefore suggested that Foulks determine whether he had flood coverage on the trailer, and agreed that if he did, Foulks would be paid for his personal effects out of the insurance proceeds. According to Thomas, Foulks then agreed to assign the proceeds of any insurance to the plaintiffs.

The Current River rose, there was a flood, and the trailer itself was practically destroyed. Foulks discovered that he did have flood coverage, and with Thomas' assistance, made proof of loss. Upon being informed by his casualty carrier that a draft for $7,000 was "in the mail" Foulks suffered an intense attack of rue bargain. He stated that he would give plaintiffs $4,000, from which they would discharge the defendant bank's lien and he would retain $3,000. Considering the proposition unreasonable, plaintiffs Reed and Thomas asked for a list of the contents of the trailer. Foulks replied "I don't have to give you a damn thing" and refused to deliver any part of the insurance proceeds to the defendant.

Plaintiffs thereupon applied to the Circuit Court of Ripley County for injunctive relief, praying, among other things, a preliminary writ enjoining defendant from negotiating and disposing of the proceeds of the insurance draft. Plaintiff also sought a mandatory injunction compelling defendant to endorse the draft and to deliver it to the defendant bank. A bond was filed and the preliminary writ ran. The defendant moved to dissolve the temporary injunction and filed an answer, admitting execution of the contract of sale. Thereafter the court heard the evidence we have recited, and mandatorily enjoined: a) defendant Foulks to endorse the insurance draft and deliver it to the defendant bank, b) the defendant bank to endorse the draft and satisfy its lien, and c) both defendants, jointly and severally, to distribute the remaining balance as follows: 1) $3,083.71 to the plaintiffs, and b) the remaining balance to defendant Foulks. Alternatively, the court ordered that plaintiffs have judgment against defendant in the amount of $3,083.71.

In this court, counsel for defendant (who did not try the case) has briefed and submitted two assignments of error, both of which are singularly inapposite. The substance of defendant's argument is that the case is not a case of equitable cognizance. Counsel is mistaken. The question here is

whether, in the absence of a contract provision allocating the burden of fortuitous loss, the doctrine of equitable conversion by contract should, during the pendency of a contract to sell real property operate to shift the entire burden of fortuitous loss to the vendee or whether, in a proper case, the vendee may compel specific performance upon conditions which compensate him for the fortuitous loss.

Our Supreme Court considered that question at length in *Skelly Oil Company v. Ashmore*, 365 S.W.2d 582, 587–89[4, 5] (Mo. banc 1963). In that case Skelly, as purchaser, sought specific performance of a contract to sell land after the structures located on the land were destroyed by fire during the pendency of the contract. There was no contract provision allocating the burden of fortuitous loss. The buildings were, however, insured against destruction by fire in the amount of $10,000. The trial court decreed specific performance, applying the insurance proceeds to the purchase price.

On appeal our Supreme Court considered the admittedly conflicting precedents at length. Without attempting to reconcile the precedents and, as we read the case, without attempting to formulate a comprehensive rationale applicable to all situations, a majority of the court held that when specific performance is meet and equitable in the circumstances, "the vendee is entitled to enforce the contract of sale, with the insurance proceeds substituted for the destroyed building," the strictures of equitable conversion notwithstanding. Id. at 589. There was a vigorous dissent in the case; the dissenters appear to have been profoundly influenced by Professor Williston's distaste for the doctrine of equitable conversion.

However that may be, the rule announced in *Skelly Oil Company* is still the law in this state and it applies to fortuitous loss by flood damage as well as to damage by fire. *3615 Corporation v. New York*

*Life Ins. Co.*, 550 F.Supp. 1035, 1036[1] (E.D.Mo.1982), aff'd 717 F.2d 1236 (1983). The dispositive question, even though it was not briefed or suggested by either party, is whether the *Skelly Oil Company* case is controlling here. We believe it is.

■ The trial court could have found in this case that the transaction was substantially complete on December 3, 1982, when Thomas suggested—and Foulks agreed—that the final payment be held in abeyance to see if insurance proceeds were available to compensate both parties for a loss which was not the fault of either. Even the dissenters in *Skelly Oil Company* would have agreed that the vendee should have the benefit of the insurance proceeds if that was the intent of the parties while the incidents of ownership were still divided.[1] It cannot be said it was inequitable in the circumstances to award the plaintiffs so much of the insurance proceeds as would compensate them for their loss; that is all that was done here, and we cannot say the trial court erred in doing so.

■ We are fully aware that we have been speaking of relief by specific performance, and the trial court granted injunctive relief. However, the burden, or "harshness" of injunctive relief, in the peculiar circumstances of this case, is illusory. The defendant could in no event negotiate his insurance draft without endorsing it for collection by the defendant bank. The defendant bank will in any case be entitled to so much of the proceeds—about $2,500—as will satisfy its lien. Defendant received $7,000; the distribution of funds ordered will leave him a net surplus of about $1,400. No complaint is made as to the *amounts* awarded. Certainly there is no "windfall" to the plaintiffs, which was one of the dissenters' objections to awarding the insurance proceeds to the vendee in the *Skelly Oil Company* case. The rule announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), does not reach nor displace the well established rule that in a

---

1. *Skelly Oil Company v. Ashmore*, 365 S.W.2d at 593 (Storckman, J., dissenting and advocating the views expressed by Professor Vannemann in his article Risk of Loss in Equity between the Date of Contract to Sell Real Estate and Transfer of Title, 8 Minn.L.Rev. 127, 141, 143 (1924).

court-tried case, a correct decision will not be disturbed because the trial court gave a wrong or insufficient reason therefor. *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318[12] (Mo. banc 1964). Further if the relief granted should have been a decree for specific performance rather than injunctive relief, it cannot be said the defendant was prejudiced thereby. If there is no actual harm, there can be no relief. *State v. Armstrong,* 605 S.W.2d 526, 530[8] (Mo. App.1980). The error is not error materially affecting the merits of the action. Accordingly, the judgment is affirmed.

CROW, P.J., and MAUS, GREENE and PREWITT, JJ., concur.