John **PAYNE** and Virgie Payne,
Plaintiffs-Appellants,

v.

Gary Lynn **PAYNE**, Gina Payne, and
Walter Payne,
Defendants-Respondents.

Nos. 14582, 14589.

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 1987.

Motion for Rehearing or Transfer
Denied April 10, 1987.

Application to Transfer
Denied May 19, 1987.

William G. Reeves, Gillihan & Reeves, Farmington, for plaintiffs-appellants.

Stephen E. Walsh, Summers, Cope & Walsh, Poplar Bluff, for defendants-respondents.

HOGAN, Presiding Judge.

These cross-appeals are before the court for a second time. See *Payne v. Payne*, 695 S.W.2d 494 (Mo.App.1985). When the appeals were first submitted we concluded the judgment was ineffective as a final judgment. The appeals were dismissed. The trial court's findings have been amended and the appeals are again before us. Unfortunately, an extended and somewhat repetitious statement of the facts is necessary to an understanding of the controversy and our resolution of the questions presented. In an effort to make the controversy and the opinion coherent, we have appended a crude sketch of the realty involved.

The appeals arose out of an unfortunate feud between relatives over two small strips of land—described as the "east" strip and the "north" strip which, taken together, constitute less than 1 acre of land located in Wayne County. Plaintiffs John and Virgie Payne were the record owners of a parcel of land—Tract "A"—which contained about 40 acres. The record descrip-

tion of Tract "A" shows a pair of intersecting quarter-quarter section lines as the north and east boundaries of plaintiffs' property. The original defendants in this action were two brothers, Gary and Walter Payne, nephews of plaintiff John Payne. Gary's wife Gina was joined as a party after the suit was filed pursuant to Rule 52.04. Gary and Gina Payne (hereinafter defendants) own the land which adjoins Tract "A" on the north and east. The record boundaries of their property are the same quarter-quarter section lines which mark the east and north boundaries of the plaintiffs' land. In one of several prior suits in which the parties were involved— referred to in the record as the "1981" suit—the plaintiffs made claim to a small strip of land—Tract "D"—which lies east of their property. The Wayne County Circuit Court ruled against the plaintiffs and found, inter alia, that Gary and Gina Payne were record fee simple owners of Tract "D." The decree was offered and received as plaintiffs' Exhibit 6. It is dated September 29, 1981.

The action at hand was commenced very shortly after the 1981 action was decided. Plaintiffs filed suit alleging that defendants Gary and Walter Payne had entered upon their land without consent and had removed or destroyed some fencing and some survey markers. Prayer of the petition was for actual and punitive damages and for injunctive relief.

The named defendants filed an answer, and later, defendants Gary and Gina Payne filed a counterclaim. Prior to trial the counterclaim was repeatedly amended and eventually stated five counts.[1] Count I of the amended counterclaim was dismissed. In Count II, defendants Gary and Gina Payne claimed title to the "east" strip by adverse possession and on the ground of estoppel by judgment and collateral estoppel, averring that the issue of title to the "east" strip had been adjudicated in the 1981 action. Count III was for damages for removal of a "historic" fence which

marked the western boundary of the "east" strip.

In Count IV of their counterclaim, defendants sought damages for removal of a "historic" fence which marked the southern boundary of the "north" strip and damages for entry upon that land. In Count V, defendants claimed title to the "north" strip by adverse possession.

The case we now consider was commenced in 1981 and finally came on for trial in 1984. Oral and documentary evidence received established the existence of old fences (referred to as "historic" fences) located slightly inside the northern and eastern record boundaries of plaintiffs' land. The distance between the record boundaries and the "historic" fences ranged from 6 to 15 feet. These spaces, distances or intervals, which we have shown as shaded areas on the sketch, constitute the "east" and "north" strip.

There was evidence that the "historic" fence on the east had been erected between 1945 and 1948. Plaintiffs' son Doyle, testifying in 1984, testified "it was put there somewhere around '45, '47, '48. Right after we moved there." Cortez Hedge, one of the defendants' predecessors in title, testified that the fence was "about twelve feet" inside the record boundary. Mr. Hedge purchased the property to the east of Tract "A" in 1945. The "historic" fence on the north was considerably older. Raleigh Payne, John's brother, testified that "me and my oldest brother put it up ... in 1930." The location of the "historic" fences is not in issue.

These fences were removed after the 1981 suit was tried. Plaintiffs' son Doyle testified that he removed the old fences and erected new ones on the plaintiffs' northern and eastern boundaries of record in October or November of 1982.

To state the trial court's findings briefly, it denied plaintiffs injunctive relief and punitive damages, but awarded plaintiffs actual damages in the amount of $220. The court found against defendants on Counts

---

**1.** The repeated amendment of the counterclaim may have been procedurally irregular, but in their reply brief in Appeal No. 14582 plaintiffs make it clear they do not wish to make an issue of any such irregularity.

II and III of their counterclaim, concluding that they had failed to establish exclusive possession to the "east" strip, and consequently had no right to damages for removal of the "historic" fence on the east.

The court found for defendants Gary and Gina Payne on Counts IV and V of their counterclaim. It concluded that they had established title by adverse possession to the "north" strip and were therefore entitled to damages for loss of use of the "north" strip from the time the plaintiffs removed the old fence and erected a new fence on the record boundary.

Appeal No. 14582 is plaintiffs' appeal. Plaintiffs contend that the trial court erred in finding that defendants Gary and Gina Payne acquired title to the "north" strip by adverse possession on the ground that the finding is "not supported by substantial and sufficient evidence." Plaintiffs also maintain that the award of damages in connection with the north strip was erroneous.

Appeal No. 14589 is defendants' appeal. They contend that the court erred in not finding them to be record title holders to the "east" strip and in failing to award damages for removal of the "historic" fence because the judgment was against the weight of the evidence. It is also asserted on this appeal that the trial court erred in granting judgment for the plaintiffs because that finding is against the weight of the evidence. It is convenient to consider the various contentions topically.

I

*The "East" Strip*

■ In connection with the "east" strip and the trial court's finding that defendants Gary and Gina Payne failed to prove title by adverse possession, it is important to bear in mind that in a bench-tried case, a correct decision will not be disturbed because the trial court gave a wrong or insufficient reason therefor. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318[12] (Mo.banc 1964); *Reed v. Foulks*, 675 S.W.2d 695, 697–98 (Mo.App.1984); *Lancaster v. Simmons*, 621 S.W.2d 935, 942[9] (Mo.App. 1981). The defendants themselves advance the contention that the parties fully litigated defendants' claim to the "east" strip in the 1981 action. We agree, but we do not reach the same conclusion as defendants concerning the effect of the prior adjudication.

■ The title to Tract "D" was put in issue in the 1981 action. Defendants Gary Lynn and Gina Payne and their immediate predecessors in title were parties defendant. The present plaintiffs were plaintiffs in the 1981 action. The "old historic" fences had not been removed and replaced when the 1981 action was decided. Tract "D" is part of a parcel of land which adjoins Tract "A" on the east. A survey showing the record boundary between Tract "D" and Tract "A" had been made and was available in the 1981 action. The parcel in issue in 1981 was described by metes and bounds, and the description does *not* include the land included in the "east" strip.

We have the view that if defendants wished to try and determine the title to the "east" strip, claiming that it marked the west boundary of Tract "D," they could and should have done so in the 1981 action. With exceptions not applicable here the doctrine of res judicata applies not only to points and issues upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Bover v. Long*, 676 S.W.2d 893, 895–96 (Mo.App. 1984); *Autenrieth v. Bartley*, 238 Mo.App. 55, 60, 176 S.W.2d 546, 549 (1943). It may also be true that the 1981 decree by necessary implication determined that the defendants' property adjoining the plaintiffs' land on the east extended no further than the quarter-quarter section line, but we need not so rule. There was no error in the trial court's ruling on Counts II and III of defendants' counterclaim.

II

*The "North" Strip*

The trial court's finding concerning title to the "north" strip was as follows:

"3. Defendants Gary Payne and Gina Payne and their predecessors did, prior to September 29, 1981, actually, openly, notoriously, exclusively, and with adverse claim of right continuously possess, use and occupy for a period of at least ten years, said 'north' strip."

As we understand the record, this "north" strip contains .34 acres. It runs a distance of 1,319.5 feet along the north line of Tract "A" and is approximately 11.2 feet wide from north to south. From 1930 until some time in 1982, the fence which marked the southern boundary of the "north" strip was the fence which enclosed Tract "A" on the north.

The evidence concerning the "north" strip was sparse. The land north of Tract "A," according to defendant Gary Payne, was "all timber." There were no structures or improvements on the "north" strip. There was no evidence of any use of the "north" strip or of the land north of Tract "A" other than Gary Payne's testimony that timber was taken off the land on one occasion. We conclude that the trial court's finding concerning title to the "north" strip is not supported by substantial evidence, for several reasons.

First, defendants Gary and Gina Payne had only owned the property north of the plaintiffs' land (Tract "A") for 3 years prior to the commencement of the present action in 1981. Their claim of title to the "north" strip was therefore dependent upon the claims and possession of their predecessors in title. Section 516.010, RSMo 1978; *Hedgpeth v. Maddux*, 366 S.W.2d 314, 315 (Mo.1963). It was, in our view, incumbent upon the defendants to show that their predecessors in title had satisfied the elements of adverse possession for at least a 7–year period prior to the time the defendants purchased the property in 1978. The record is devoid of any such evidence. Gary Payne testified that he had been on the "north" strip only once since he purchased the property north of Tract "A" in 1978, when he "went plumb around my 160 acres with a dozer." As far as prior owners of the land located north of Tract "A" is concerned, there is no evidence that they

ever used, intended to use, or even set foot on the "north" strip.

 To be more specific, and possibly redundant, there is no evidence that defendants and their predecessors in title ever had what is called "actual possession" of the "north" strip. Defendants did not have color of title; they acquired title from one Charles Brandon and his wife by warranty deed which does not purport on its face to convey *any* realty located in Section 33. Rather, their deed conveys only the SE 1/4 in Section 28, Township 28, Range 8, which of course lies immediately north of Tract "A." (Defendants' Exhibit 7.) It cannot be said this deed includes within its description, pretensively or otherwise, any part of Tract "A." See *Teson v. Vasquez*, 561 S.W.2d 119, 126[9–12] (Mo.App.1977). When a claimant occupies land without color of title, he must show physical possession of the entire area claimed by adverse possession and mere mental enclosure of the land, such as Gary Payne's belief that the "historic" fence was the south boundary of his property, did not constitute the requisite actual possession. *Teson v. Vasquez*, 561 S.W.2d at 126. Proof of "actual possession" requires some showing of continual acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements and paying taxes on the land. The performance of any or all of these acts serves as evidence of actual possession, but is not conclusive. *Teson v. Vasquez*, 561 S.W.2d at 126[6–8]. When, however, there is no evidence that the claimants by adverse possession or their predecessors in title ever performed any of these occupancies, claimants have failed to show the first element of adverse possession and of course failure to prove any one element of adverse possession prevents the ripening of title. *Conran v. Girvin*, 341 S.W.2d 75, 90 (Mo.banc 1960); *Teson v. Vasquez*, 561 S.W.2d at 126[6–8]. To tidy up, without belaboring the point, the *only* activity shown by the record to have occurred on the "north" strip or on the land to the north of Tract "A" was an isolated act of cutting timber by one George Hemby in 1974 and Gary's drive around his 160 acres with a bulldozer. Such activity does not

constitute "actual" possession when the land is uncultivated timber land, as is the "north" strip. *Conran v. Girvin,* 341 S.W.2d at 90. We conclude the defendants' claim to the "north" strip by adverse possession fails for want of evidence of actual possession.

Defendants also argue that the old "historic" fence had become the boundary between their land in Section 28 and Tract "A" by acquiescence. We cannot agree. It is true, as this court held in *Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128[3] (Mo.App.1979), that when owners of adjoining land occupy their respective properties up to a certain line which they mutually recognize and acquiesce in for a long period of time, they may be precluded from claiming that the line acquiesced in is not the true boundary. Nevertheless, naked possession by the respective parties, unaccompanied by any act by either party tantamount to a claim of title, such as cultivation or cutting timber, is not sufficient to show an agreement to regard a particular fence as a boundary. *Tillman v. Hutcherson,* 348 Mo. 473, 481, 154 S.W.2d 104, 108[8] (1941); *Ware v. Cheek,* 201 S.W. 847, 849 (1918). What we have said concerning "actual" possession of the "north" strip is sufficient to dispose of the argument that the "old historic" fence became a boundary by acquiescence. We conclude that Gary and Gina Payne's claim to the "north" strip is not supported by competent and substantial evidence and the trial court's judgment finding them to be vested with title to the north strip by adverse possession must be reversed.

### III

*Defendants' Claims for Damages*

In Appeal No. 14589, defendants Walter, Gary and Gina Payne have raised three points concerning claims for money damages. Defendants Walter and Gary Payne—the original defendants—contend that the trial court erred in awarding plaintiffs $220 for damage to fencing located on the "east" strip because the plaintiffs failed to prove their damages. Defendants Gary and Gina Payne argue that the trial court should have awarded them damages in the amount of $1,500 for removal of the old woven wire or "historic" fence from the western boundary of the "east" strip, and further argue that the court should have awarded them punitive damages for plaintiffs' intentional and willful removal of the old "historic" fence on the north and for erecting a new fence on the record boundary.

### (a)

The judgment against defendants Gary and Walter Payne in the amount of $220 for damages to fencing and a survey marker on the "east" strip must be affirmed. Plaintiff John Payne testified that he saw defendants Gary and Walter Payne drive onto his premises "around 5:00 in the evening" and that they "run through the wire and the post." John's evidence was that a survey marker was "broke off right at the top of the ground" and "it cost about $200 to get it put back." John also testified that he had paid his grandson $100 to replace the damaged fencing and that he owed Doyle the same amount. In our view, this evidence is sufficient to support the trial court's award of $220 damages to the plaintiffs. It is true that plaintiffs' evidence of damages is not very definite, but if an award of damages is within the range of the evidence, an award of a particular amount may be considered responsive even though it does not correspond precisely with the amount claimed. See *Baker v. Brown's Estate,* 365 Mo. 1159, 1165, 294 S.W.2d 22, 27[14] (1956); *Watkins v. Johnson,* 606 S.W.2d 493, 496[6] (Mo.App.1980). Defendants' argument that plaintiffs "utterly failed to establish damages by a legally approved formula" is without merit in the circumstances of this case. The trial court allowed the cost of repair. Inasmuch as the damages claimed were damages for the destruction of a fence, it was proper to allow the cost of repair. See *Bolton v. Missouri-Kansas Railroad Company,* 373 S.W.2d 169, 172–73[2][3] (Mo.App.1963).

### (b)

Defendants Gary and Gina Payne also argue, in Appeal No. 14589, that the trial court erred in refusing to award them puni-

tive damages for removal of the "historic" fence which marked the southern boundary of the "north" strip. Inasmuch as the court erred in vesting title to the "north" strip in defendants Gary and Gina by adverse possession, as we have held, there was no occasion to award damages, actual or punitive. For the same reason, the trial court erred in awarding defendants Gary and Gina $220 as damages for loss of use of the "north" strip, as plaintiffs assert in Appeal No. 14582.

To summarize our conclusions, we hold:

1. That the judgment in favor of plaintiffs on their claims for trespass and damages to fencing and survey markers should be affirmed.

2. That the trial court's finding against defendants Gary and Gina Payne on Counts II and III of their counterclaim, wherein they sought an adjudication of title by adverse possession to the "east" strip and damages for removal of the "historic" fence thereon, should be affirmed.

3. That the judgment vesting title to the "north" strip in defendants Gary and Gina Payne by adverse possession should be reversed. The finding that these defendants were entitled to $220 for loss of use of this "north" strip should also be reversed.

The cause is remanded for entry of judgment in accordance with this opinion.

PREWITT, C.J., and MAUS and CROW, JJ., concur.

PLAT OF NW 1/4 OF NE 1/4, SEC. 33

TWP 28 N. RNG. 8 E., WAYNE COUNTY

N 1/4 COR. SEC. 33, T. 22 N. R. 8 E.

RELOCATED E 1/16 COR. SECT'S 28 and 33

TRACT D NE 1/4 NE 1/4

EAST STRIP

NORTH STRIP

TRACT A IN NW 1/4 NE 1/4 38.669 AC